UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RIVEN N., <br>         Plaintiff, <br>   v. <br> KILOLO KIJAKAZI, Acting Commissioner of Social Security, <br>         Defendant. | Case No. 5:22-cv-00588-GJS <br><br> **MEMORANDUM OPINION AND ORDER** |

## I.    PROCEDURAL HISTORY

Plaintiff Riven N.[1] filed a complaint seeking review of the decision of the Commissioner of Social Security denying her application for a period of disability and Disability Insurance Benefits ("DIB") and her application for Supplemental Security Income ("SSI"). The parties filed consents to proceed before a United States Magistrate Judge (ECF Nos. 11, 14) and briefs (ECF Nos. 16 ("Pl.'s Br.") and 19 ("Def.'s Br.")) addressing the disputed issue in the case. The matter is now ready

---

[1] In the interest of privacy, this Order uses only the first name and last initial of the non-governmental party in this case.

for decision. For the reasons set forth below, the Court finds that this matter should be remanded.

## II.  ADMINISTRATIVE DECISION UNDER REVIEW

On July 22, 2019, Plaintiff filed an application for DIB, and an application for SSI, alleging disability commencing on July 8, 2019. (ECF No. 13, Administrative Record ("AR") 15; *see also* AR 275-76.) Plaintiff's application was denied at the initial level of review and on reconsideration. (AR 15, 69, 70.) A hearing was held before Administrative Law Judge Charles A. Dominick ("the ALJ") on March 10, 2021, at which Plaintiff appeared without representation. (AR 61-68.) The ALJ continued the hearing to allow Plaintiff time to obtain representation and the continued hearing was held on June 8, 2021, with Plaintiff represented by counsel. (AR 15, 35-60.)

On September 17, 2021, the ALJ issued an unfavorable decision applying the five-step sequential evaluation process for assessing disability. (AR 15-28); *see* 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1). At step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since the alleged onset date. (AR 17.) At step two, the ALJ determined that Plaintiff has the following severe impairments: obesity; seizure disorder; unspecified psychosis; attention deficit hyperactivity disorder ("ADHD"); depression; schizophrenia; generalized anxiety disorder; and posttraumatic stress disorder. (AR 17.) At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in Appendix 1 of the Regulations. (AR 18); *see* 20 C.F.R. pt. 404, subpt. P, app. 1. The ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform medium work, as defined in 20 C.F.R. §§ 404.1567(c), 416.967(c), as follows:

> [She] must avoid unprotected heights and dangerous moving machinery. [She] is limited to no more than frequent reaching, handling, and fingering. [She] is limited to jobs requiring no more than a reasoning level of 2. [She] must avoid fast-paced production rate pace type work. [She] is limited to no more than occasional changes in the work setting. [She] is limited to occasional interaction with supervisors, co-workers, and the public.

(AR 21-22.) At step four, the ALJ determined that Plaintiff is not able to perform her past relevant work as a convenience clerk, an event crew member, and a media technician. (AR 26.) At step five, based on the testimony of the vocational expert ("VE"), the ALJ found that Plaintiff could perform other jobs existing in significant numbers in the national economy, including representative jobs such as cleaner, and box maker.[2] (AR 27.) Based on these findings, the ALJ found Plaintiff not disabled through the date of the decision. (AR 27.)

The Appeals Council denied review of the ALJ's decision on February 23, 2022. (AR 1-5.) This action followed.

### III. GOVERNING STANDARD

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). "Substantial evidence . . . is 'more than a mere scintilla' . . . [i]t means – and only means – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted); *Gutierrez v.*

---

[2] In his decision, the ALJ referred to the representative occupation as "Box Marker." (AR 27.) Based on the testimony of the VE and the Dictionary of Occupational Titles number assigned to the occupation (AR 58; DOT No. 795-684-014), the actual title of the occupation is "Box Maker."

*Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal quotation marks and citation omitted).

The Court will uphold the Commissioner's decision when "the evidence is susceptible to more than one rational interpretation." *See Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "inconsequential to the ultimate nondisability determination, or if despite the legal error, the agency's path may reasonably be discerned." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal quotation marks and citations omitted).

## IV.  DISCUSSION

Plaintiff raises the following issue challenging the ALJ's findings and determination of non-disability: the ALJ improperly rejected Plaintiff's subjective symptom testimony by failing to offer any specific, clear and convincing reasons supported by substantial evidence in the record for doing so. (Pl.'s Br. 2.) As discussed below, the Court agrees with Plaintiff and finds that remand is appropriate.

**A.  LEGAL STANDARD**

In evaluating a claimant's subjective symptom testimony, an ALJ must engage in a two-step analysis. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007); 20 C.F.R. § 404.1529(c). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which "could reasonably be expected to produce the pain or other symptoms

alleged." *Lingenfelter*, 504 F.3d at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if the claimant meets the first step and there is no evidence of malingering, "'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Id.*, 504 F.3d at 1036 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). At the same time, the "ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to the Social Security Act." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (citation and internal quotation marks omitted).

### B. ANALYSIS

In the present case, the ALJ discounted Plaintiff's subjective complaints based on (1) perceived inconsistencies between Plaintiff's testimony and the objective medical record, (2) Plaintiff's activities of daily living, and, according to Defendant, (3) improvement with medication and medication noncompliance. (AR 23-24.)

#### 1. Inconsistency with the Medical Record

While a lack of objective medical evidence supporting a plaintiff's subjective complaints cannot provide the only basis to reject a claimant's subjective symptom testimony (*Trevizo v. Berryhill*, 871 F.3d 664, 679 (9th Cir. 2017) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006))), it is one factor that an ALJ can consider in evaluating symptom testimony. See *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor the ALJ must consider in his credibility analysis."); Soc. Sec. Ruling ("SSR") 16-3p, 2017 WL 5180304, at *5 ("objective medical evidence is a useful indicator to help make reasonable

5

conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities for an adult"). "The intensity, persistence, and limiting effects of many symptoms can be clinically observed and recorded in the medical evidence. . . . These findings may be consistent with an individual's statements about symptoms and their functional effects. However, when the results of tests are not consistent with other evidence in the record, they may be less supportive of an individual's statements about pain or other symptoms than test results and statements that are consistent with other evidence in the record." SSR 16-3p, 2017 WL 5180304, at *5.

As the Ninth Circuit recently held, "an ALJ's 'vague allegation' that a claimant's testimony is 'not consistent with the objective medical evidence,' without any 'specific finding in support' of that conclusion, is insufficient." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) (citation omitted); *see Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017) (ALJ's statement that plaintiff's testimony regarding the intensity, persistence, and limiting effects of his symptoms was not credible to the extent his testimony is "inconsistent with the above residual functional capacity assessment" is an insufficient basis for discrediting testimony).

Here, the ALJ first summarized Plaintiff's testimony regarding her mental health limitations as follows:

> She alleges difficulties with memory and concentration and difficulties completing tasks. She alleges difficulties understanding and following instructions and difficulties getting along with others. She alleges difficulties with household chores and simple daily activities. She alleges difficulties handling stress and changes in routine. At her hearing, . . . she indicated her mental issues, [sic] were more severe [than her physical issues] in affecting her ability to work. [She] reported she had trouble socializing and speaking. She explained she experienced auditory and visual hallucinations. [She] testified she had difficulty concentrating and needed reminders to shower. She expressed she spent most of the day in bed. [She] testified she experienced seizures 2 to 3 times per day lasting up to 3 minutes each.

(AR 22 (citations omitted).)

The ALJ then summarized the medical evidence relating to Plaintiff's seizures and mental health impairments and limitations, repeatedly concluding that Plaintiff's subjective symptom complaints were unsupported by the objective medical evidence. For instance, the ALJ summarized Plaintiff's March 18, 2020, treatment records, first noting that they reflected depressed and anxious mood and mild impairment of judgment, but then noting that the mental status examination findings reflected "cooperative behavior, good impulse control," appropriate affect, normal speech and language, insight into her disorder, and other "positive" findings. (AR 24 (citing AR 487-504).) After his summary, the ALJ summarily concluded that the "clinical findings do not support greater mental functional limitations." (AR 24 (citing AR 487-504).)

Similarly, after summarizing Plaintiff's March 16, 2020, consultative mental health examination results, which revealed Plaintiff "to be anxious, with self-reported auditory and visual hallucinations, difficulty with cognition, orientation, memory, and concentration," the ALJ also pointed out that the mental status examination reflected Plaintiff to be cooperative, alert, well groomed, with good eye contact, normal speech, and "having common sense understandings." (AR 24 (citing AR 509-14).) The ALJ again summarily concluded that the "clinical findings do not support greater mental functional limitations." (AR 24.)

The records cited to by the ALJ, however, not only reflect depressed and anxious mood, and impaired judgment, as well as other more "positive" mental status examination results, they (as well as Plaintiff's other treatment records) also reflect ongoing mental health symptoms and diagnoses, and treatment for those mental health problems. For instance, the March 18, 2020, treatment record referred to by the ALJ reflected that Plaintiff reported experiencing the following symptoms "nearly every day" in the prior two weeks: little interest or pleasure in doing things;

trouble falling asleep or staying asleep; poor appetite or overeating; trouble concentrating on things; and moving or speaking so slowly that others notice, or being so fidgety or restless that you move around a lot more than usual. (AR 488.) Plaintiff also reported that more than half the days in the prior two weeks she felt down, depressed, or hopeless, and for several days during that period she felt bad about herself and felt that she would be better off dead. (AR 488.) Plaintiff scored a 22 on the depression assessment, with a diagnosis of severe major depression, and the anxiety assessment reflected moderate anxiety. (AR 489.) The consultative examiner diagnosed Plaintiff with unspecified psychotic disorder, generalized anxiety disorder, persistent depressive disorder, and health problems. (AR 512.)

      The ALJ failed to explain how Plaintiff's mental status examination at these visits, reflecting cooperative behavior, good impulse control, being alert, and "having common sense understandings," among other things, was somehow inconsistent with her subjective mental health symptom testimony, or with the treating providers' clinical assessments and treatment of her mental health issues. In fact, there is no evidence that the treating providers expressed any surprise or concern that an individual with severe major depression and/or generalized anxiety might nevertheless also be found to be cooperative, alert, or exhibit common sense understandings. *Cf. Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (citation omitted) (noting that a claimant "does not need to be 'utterly incapacitated' in order to be disabled").

      Moreover, an ALJ "must identify the testimony that [is being discounted], and *specify* 'what evidence undermines the claimant's complaints.'" *Treichler*, 775 F. 3d at 1103 (citation omitted) (emphasis added); *Brown-Hunter*, 806 F.3d at 493. The ALJ's summary and conclusion here did not tie any of Plaintiff's subjective symptom testimony to the record evidence. Instead, the ALJ's running narrative regarding certain positive and negative findings in Plaintiff's treatment records, and

his seeming determination that the positive mental status examination findings somehow contradicted the treating providers' clinical findings and plaintiff's subjective symptom testimony, did not provide "the sort of explanation or the kind of 'specific reasons' we must have in order to review the ALJ's decision meaningfully, so that we may ensure that the claimant's testimony was not arbitrarily discredited," nor can the error be found harmless. *Brown-Hunter*, 806 F.3d at 493 (rejecting the Commissioner's argument that because the ALJ set out his RFC determination and summarized the evidence supporting that determination, the Court can infer that the ALJ rejected the plaintiff's testimony to the extent it conflicted with that medical evidence, because the ALJ "never identified *which* testimony [he] found not credible, and never explained *which* evidence contradicted that testimony") (citing *Treichler*, 775 F.3d at 1103, *Burrell*, 775 F.3d at 1138).

The Court determines, therefore, that this was not a specific, clear and convincing reason for discounting Plaintiff's subjective symptom testimony. Moreover, even assuming this was a specific, clear and convincing reason, it cannot be the only reason. Thus, the ALJ's determination to discount Plaintiff's subjective symptom testimony for this reason rises or falls with the ALJ's other grounds for discrediting Plaintiff's testimony. As seen below, those other grounds are insufficient as well.

### 2. Activities of Daily Living

"Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." *Trevizo*, 871 F.3d at 682 (citing *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014)). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Id.* (citing *Turner v. Comm'r of Soc. Sec.*, 613 F.3d

1217, 1225 (9th Cir. 2010); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009)). An ALJ may also rely on a claimant's daily activities to support an adverse credibility determination when those activities "meet the threshold for transferable work skills"; *i.e.*, where she "is able to spend a substantial part of . . . her day performing household chores or other activities that are transferable to a work setting." *Orn*, 495 F.3d at 639. However, an ALJ "must make specific findings relating to the daily activities and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." *Id.* (citation and alteration omitted). A claimant need not be "utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication." *Id.* (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)) (internal quotation marks omitted). Indeed, the Ninth Circuit has "repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan*, 260 F.3d at 1050.

Here, the ALJ summarized Plaintiff's activities of daily living and concluded as follows:

> [Plaintiff] reported on consultative psychological exam that she lived with her fiancé's parents and was able to perform her own self-care skills, help with household chores, and manage her own money. She reported in her function report that she was able to help care for a pet cat and enjoyed daily reading. She indicated she was able to handle her personal care, prepare simple meals, utilize a dishwasher, shop in stores for basic food items and medications. While the undersigned acknowledges that [Plaintiff] has some limitations performing these activities, and while none of these activities is dispositive, taken together and considered in conjunction with the above medical evidence of record, they suggest that [Plaintiff] can perform work within the parameters [of the RFC] on a sustained and continuous basis.

(AR 24-25 (citations omitted).)

The ALJ failed to consider many of the numerous details discussed by Plaintiff with respect to her activities of daily living. For instance, with respect to self-care skills, Plaintiff actually reported in her Adult Function Report (AR 332-39) that she rarely bathes because she is afraid of having a seizure while doing so; does not shave because she experiences hallucinations when looking in the mirror; other than breakfast, she often forgets to eat regular meals and is "wary" around forks and knives due to spasms (AR 333); her roommate reminds her to take care of personal needs and grooming because Plaintiff otherwise forgets (AR 334); once a day she can prepare cereal or peanut butter sandwiches, or sometimes chicken nuggets in the microwave (AR 334); she helps with the "Dishwasher [maybe twice a month], [and] check[s] the mail, sweep[s] once a month" (AR 334); she feeds the cat every other day (AR 333); she reads "for about half an hour" in the morning (AR 332); she can handle a savings account but does not pay bills, count change, or use a checkbook, and she does not "trust self with major decisions like finances" during times where "reality feels distorted" (AR 335); counting change is difficult due to her attention span (AR 335); and she shops for basic food items and medications "once every few weeks" for less than one hour (AR 335).

Not only did the ALJ mischaracterize the extent of Plaintiff's involvement in her admitted daily activities, the ALJ did not explain *how* those *limited* daily activities -- even in combination -- contradict her testimony or are transferable to a work setting and evidence of being able to perform "sustained and continuous" work. In fact, there is no evidence that Plaintiff spent even close to a substantial part of her day engaged in her daily activities, and the ALJ neither made specific findings nor pointed to any record evidence to support his conclusion that Plaintiff's daily activities constituted substantial evidence that Plaintiff could perform sustained and continuous work, *i.e.*, on a daily basis for eight hours per day.

Accordingly, this was not a specific, clear and convincing reason to discount

11

Plaintiff's subjective symptom testimony.

### 3. Improvement with Medication

In reviewing Plaintiff's subjective symptom testimony, the ALJ stated the following:

> The undersigned also notes that [Plaintiff] reported improvement of her mental health symptoms with medication. [AR 490.] Moreover, some periods of exacerbations in [her] symptoms seem to be related to medication compliance issues. [AR 556.] In any event, when examined longitudinally, these treatment records demonstrate a baseline level of functioning consistent with the ability to sustain work within the parameters set forth in the above residual functional capacity.

(AR 24.)

Defendant asserts that Plaintiff's alleged improvement with medication and her failure to follow a prescribed course of treatment are valid reasons for the ALJ to discount Plaintiff's subjective symptom testimony. (Def.'s Br. 5 (citing *Warre v. Comm'r of Soc. Sec.* 439 F.3d 1001, 1006 (9th Cir. 2006), *Tommasetti v.* Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008)).) It is not clear, however, that the ALJ actually relied on those reasons to discount Plaintiff's testimony. Instead, it seems that he merely determined that even when Plaintiff was not taking her medication, her baseline functioning was consistent with the ALJ's RFC determination.

The two treatment notes referred to by the ALJ to support this proposition, also do not provide substantial evidence for either discounting Plaintiff's testimony, or for providing a "baseline level of functioning consistent with the ability to sustain work." The March 18, 2020, treatment note (AR 490), reflecting a visit to Adelanto Health Center to establish care, reflects that Plaintiff noted she had been off of her Adderall (a medication for ADHD) for a "prolonged period," which "usually" makes her feel anxious and lacking in the ability to concentrate. Similarly, the November 20, 2020, treatment note (AR 556) relied on by the ALJ reflects a visit to Hesperia Health Center at which Plaintiff reported she had started Depakote for her

seizures, which had decreased the frequency and duration of her seizures to 1 per day (instead of 2 per day) for a duration of up to 1.5 minutes (decreased from 2 to 6 minutes). At that visit, Plaintiff also reported a decrease in her psychotic symptoms and feeling less "foggy," and a 15-20% improvement in mood. (AR 557.) She also, however, continued to endorse symptoms of depression including poor mood; anhedonia; trouble falling and staying asleep; poor energy, concentration, appetite, and self-worth; and a 20% improvement in anxiety, although she continued to endorse mild to moderate anxiety including constant worrying about multiple things and fear that something horrible will happen. (AR 557.)

To the extent the ALJ may have relied on Plaintiff's alleged failure to follow a prescribed course of treatment or improvement with medication to discount her subjective symptom testimony, these brief mentions of Plaintiff not taking her Adderall do *not* warrant a conclusion that Plaintiff was noncompliant with her medication. Indeed, both notes provide a valid explanation for Plaintiff's failure to take the previously-prescribed Adderall -- in the March 2020 note, she appears to have moved "from [A]lbequerque," and her prescription could not be filled or renewed until authorized by her new treatment center and a psychiatrist. (AR 490.) The November 2020 treatment note reflects that the Adderall had not yet been approved. (AR 557.)

Additionally, the ALJ's concluding statement -- without explanation -- that these treatment notes reflect a baseline level of functioning consistent with an ability to sustain work within the parameters of the ALJ's RFC determination, "does not . . . add anything to the ALJ's determination of either the RFC or [Plaintiff's] credibility." *See Laborin*, 867 F.3d at 1154-55 (noting that it cannot be inferred from the ALJ's conclusory language discrediting the claimant's testimony to the extent it is inconsistent with the RFC determination that the ALJ rejected the claimant's testimony to the extent it conflicted with the medical evidence).

Accordingly, even if the ALJ's statement regarding Plaintiff's medication efficacy or compliance is considered to be a reason given by the ALJ to discount Plaintiff's subjective symptom testimony, the Court determines that it is not a specific, clear and convincing reason for doing so.

## V. REMAND FOR FURTHER PROCEEDINGS

Where, as here, the ALJ fails to state legally sufficient reasons for discounting a claimant's subjective complaints, a court ordinarily cannot properly affirm the administrative decision. *See Robbins*, 466 F.3d at 884-85. Additionally, the Court is unable to conclude that the ALJ's errors in evaluating Plaintiff's subjective complaints were "harmless" or "inconsequential to the ultimate non-disability determination." *Brown-Hunter*, 806 F.3d at 492.

As the circumstances of this case suggest that further administrative proceedings could remedy the ALJ's errors, remand is appropriate. *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); *Treichler*, 775 F.3d at 1101, n.5 (remand for further administrative proceedings is the proper remedy "in all but the rarest cases"); *Harman v. Apfel*, 211 F.3d 1172, 1180-81 (9th Cir. 2000) (remand for further proceedings rather than for the immediate payment of benefits is appropriate where there are "sufficient unanswered questions in the record").

## VI. CONCLUSION

For all the foregoing reasons, **IT IS ORDERED** that:

(1) the decision of the Commissioner is **REVERSED** and this matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Memorandum Opinion and Order;

14

and

(2) Judgment be entered in favor of Plaintiff.

**IT IS SO ORDERED.**

DATED:  March 21, 2023

_____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE